UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL L. MARTIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:18-cv-02911 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1959, applied on January 27, 2014 for SSI, alleging disability beginning March 1, 2013. Administrative Transcript ("AT") 16, 302-310. Plaintiff alleged she was unable to work due to back injuries, knee injuries, arthritis, nerves, depression, constant fatigue,

1

recurring diverticulitis, irritable bowel syndrome, fatty liver, and low blood sugar. AT 97. In a decision dated May 10, 2018, the ALJ determined that plaintiff was not disabled.[1] AT 15-31. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine(s) and obstructive sleep apnea.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except as follows: the claimant is limited to occasional stooping, kneeling, crouching and climbing of stairs. The claimant is able to sit for 15 minutes at one time for a total of 6 hours in an 8-hour workday. The claimant is able to stand or walk for 15 minutes at one time for a total of 6 hours in an 8-hour workday.
>
> 6. The claimant is capable of performing past relevant work as an eligibility worker II (DOT: 195.267-010) and library assistant (DOT: 249.367-046). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2013, through the date of this decision.

AT 18-31.

## ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly evaluated the severity of plaintiff's impairments at Step Two; (2) the ALJ improperly weighed the medical opinions; and (3) the ALJ improperly discounted plaintiff's credibility.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

The undersigned first considers plaintiff's argument that the ALJ improperly weighed the medical opinion evidence, with particular emphasis on the opinion of Dr. Mdhmaz Hojjati, a rheumatologist who treated plaintiff for fibromyalgia.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

4

1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590). "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." Id. (internal quotation marks and alteration omitted). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." Id. (internal quotation marks omitted). "Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Id. (internal quotation marks and alteration omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.' " Id. (quoting Benecke, 379 F.3d at 590). "[T]here are no laboratory tests to confirm the diagnosis." Id. (alteration in original) (quoting Benecke, 379 F.3d at 590).

Social Security Ruling ("SSR") 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p). For this reason, the ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'" Id. (quoting SSR 12-2p). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke[, 379 F.3d 587]. The failure to do so is

error[.]" Id. at 662.

Dr. Hojjati, a rheumatologist, began treating plaintiff in May 2015, following up on her diagnosis of fibromyalgia[2], and saw her again in October 2015. AT 1620, 1933. On January 7, 2016, Dr. Hojjati filled out a Disability Impairment Questionnaire, diagnosing her with fibromyalgia and carpal tunnel syndrome, among other conditions. AT 1933. As to clinical findings supporting the diagnosis, Dr. Hojjati noted "rheumatology labs – negative,"[3] mildly thickened MCP joints and flexor tendons in both hands, and tender extensor tendons in both wrists. AT 1933. Dr. Hojjati opined that plaintiff had diffuse pain in her neck, lower back, knee, arms, wrists, forearms, and ankles. AT 1934. She was taking Diazepam but had tried and failed numerous NSAID and nerve pain medications due to side effects.[4] AT 1934. Dr. Hojjati opined various physical limitations, including that plaintiff could lift and carry up to 10 pounds occasionally but never more than that, and could occasionally reach, handle or finger. AT 1935-1936. Dr. Hojjati opined that plaintiff's symptoms would likely increase in a competitive work environment and that she would need to take multiple unscheduled breaks per day. AT 1936.

Also in 2016, Dr. Hojjati filled out a questionnaire specific to fibromyalgia. AT 2064-2068. Dr. Hojjati opined that plaintiff met the American College of Rheumatology criteria for fibromyalgia[5] and there were no diagnoses that better explained her symptoms and limitations.

---

[2] Plaintiff notes that her earlier rheumatology work-up, performed in January 2015 by Dr. Hojjati's colleague Dr. Colyan Dennehy, is not in the record. (ECF No. 17 at 31.)

[3] Laboratory tests ruled out various other conditions (e.g., lupus, celiac disease, and Lyme disease) as causing plaintiff's symptoms; thus, Dr. Hojjati noted that rheumatology tests were negative. AT 1736-1739, 1933.

[4] In October 2015, Dr. Hojjati noted that plaintiff "takes herbal remedies for pain, has major issues with medication tolerance" and "prefers not to take any meds given her significant allergy issues." AT 1620.

[5] As the Ninth Circuit recently explained, the Social Security Administration recognizes two methods for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). Social Security Ruling ("SSR") 12-2P at 2, available at 77 Fed. Reg. 43,640 (July 25, 2012). Under the 1990 Criteria:

a person suffers from fibromyalgia if: (1) she has widespread joint

AT 2064. Dr. Hojjati noted that plaintiff had "widespread pain or a history of widespread pain in all quadrants of the body that has persisted for at least three months," and that she had at least 11 positive tender points upon examination. AT 2065. These tender points were located in the neck, shoulders, knees, ankles, hands, and low back. AT 2065. Associated symptoms included difficulty thinking, poor memory, depression, fatigue, headache, muscle weakness, and numbness/tingling. AT 2065. Dr. Hojjati noted that plaintiff's pain was "constant in different areas" and was aggravated by touch, movement, and activity. AT 2066. The opinion stated that plaintiff's symptoms were expected to last at least 12 months and that she was not a malingerer. AT 2064. As plaintiff could not tolerate prescribed medications, she was currently taking only supplements. AT 2066. Dr. Hojjati listed four prescription medications plaintiff had tried but "could not tolerate," despite attempts to substitute medications to produce fewer ill effects. AT 2066.

In the fibromyalgia questionnaire, Dr. Hojjati opined that plaintiff could sit for two hours and stand/walk for two hours in an 8-hour workday, and that it was medically necessary for her to avoid continuous sitting in an 8-hour workday. AT 2067. Dr. Hojjati assessed limitations on

---

> pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.

Truong v. Berryhill, 774 Fed. Appx. 381, 382-383 (9th Cir. 2019) (unpublished) (quoting Revels v. Berryhill, 874 F.3d 648, 656–57 (9th Cir. 2017), SSR 12-2P at 2–3)). Under the 2010 Criteria:

> a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestation of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Revels, 874 F.3d at 657 (quoting SSR 12-2P at 3). Notably, "diagnosis of fibromyalgia does not rely on X-rays or MRIs." Id.

lifting, carrying, reaching, handling, and fingering, and opined that plaintiff would experience pain more often if she were placed in a competitive work environment. AT 2067-2068. Dr. Hojjati opined that plaintiff would be absent from work more than three times a month and that her "experience of pain, fatigue or other symptoms" would interfere with attention and concentration for up to two-thirds of an 8-hour workday.[6] AT 2068.

The ALJ assessed Dr. Hojjati's opinions as follows:

> In January and August 2016, treating physician, M. Hojjati, M.D., opined that the claimant was limited to restrictions consistent with less than a full range of sedentary work and that she would miss more than three days a month from work due to her impairments. Additional limitations included frequent interruption in the ability to perform work and occasional reaching, handling, fingering, and feeling. Dr. Hojjati opined the claimant's depression could contribute to functional limitations.[7]
>
> These assessments are given little weight. First, they are extreme and out of proportion to objective evidence. For example, the assessments find the claimant limited to at least sedentary work, whereas findings included normal range of motion in all joints, normal gait, normal motor function, 5/5 muscle strength in the upper and lower extremities, normal reflexes and intact sensation. One questions how the claimant retained full muscle tone and strength despite limitations to sedentary work. Likewise, one questions the significant limitations on standing/walking, while the claimant retains normal gait. Second, the assessments are inconsistent with the history of conservative medical care. Given the limitations, one would expect far more aggressive treatment recommendations. Finally, the limitations are inconsistent with activities of daily living, including performing work activity, driving a car, shopping for groceries, and performing household chores.

AT 29-30.

The ALJ also discussed Dr. Hojjati's fibromyalgia questionnaire at Step Two, writing:

> In the questionnaire, treating physicians reported a diagnosis of fibromyalgia, indicating there are no diagnoses that better explain the claimant's condition. In the questionnaire, treating physician found

---

[6] Similarly, plaintiff's primary care physician Dr. Craig Hall opined in 2015 that plaintiff was not a malingerer, had multiple physical limitations, suffered from memory problems and fatigue, was likely to miss about four days of work per month, and would have difficulties working "a regular job on a sustained basis." AT 1572-1574. The ALJ assigned this opinion little weight for the same reasons cited as to Dr. Hojjati's opinions. AT 29-30.

[7] Citing AT 1933-1937 and AT 2064-2068.

8

> the claimant limited to less than sedentary work and unable to sustain regular work function due to the combined effect of the claimant's impairments. Relative to the claimant's diagnosis of fibromyalgia, the undersigned gives this assessment little weight. Although the report indicates a diagnosis of fibromyalgia, it does not include actual test results that reflect the criteria above. The undersigned finds the mere statement insufficient in light of the lack of evidence to substantiate the condition.

AT 25.

While discounting Dr. Hojjati's opinions, the ALJ credited the opinions of two State agency physicians who opined that plaintiff could perform light work with postural limitations. AT 29. To these opined physical limitations, the ALJ "added a limitation to allow for alternating between sitting and standing/walking positions to accommodate chronic pain complaints, in an abundance of caution, with consideration to the claimant's long-standing medical care and pain complaints." AT 29. As to mental impairments, the ALJ credited the opinions of State agency consultants who found these to be nonsevere, and an examining doctor who opined that plaintiff's mental impairments caused only mild limitations. AT 21-22. The resulting RFC included no mental limitations.

Plaintiff argues that the ALJ provided insufficient reasons to reject the opinions of her treating rheumatologist. In Benecke, 379 F.3d at 594 n.4, concerning a claimant diagnosed with fibromyalgia, the Ninth Circuit gave treating rheumatologists' opinions

> greater weight than those of the other physicians because it is an "opinion of a specialist about medical issues related to his or her area of specialty," citing 20 C.F.R. § 404.1527(d)(5). Rheumatology is the relevant specialty for fibromyalgia. Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996) (describing fibromyalgia as an "elusive and mysterious" disease).

Id. (some internal citations omitted).

Here, the ALJ discounted Dr. Hojjati's fibromyalgia opinion for the following stated reasons: (1) it did not include test results supporting the opined limitations, (2) the limitations were "out of proportion to objective evidence," (3) the opinion was inconsistent with the "history

9

of conservative medical care," and (4) the opined limitations were inconsistent with plaintiff's activities of daily living.

However, the ALJ did not acknowledge that Dr. Hojjati was an expert in the relevant specialty for fibromyalgia and thus entitled to particular deference. See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (ALJ erred by failing to recognize that specialist's opinion "is owed greater weight as a matter of regulation" and failing to "afford the deference to which [treating specialist] was presumptively entitled").

While the ALJ reasoned that Dr. Hojjati's fibromyalgia opinion lacked supporting test results, he did not consider the longitudinal record as supporting evidence. See Revels, 874 F.3d at 657 ("after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'"). In August 2016, Dr. Hojjati opined that plaintiff's fibromyalgia symptoms and limitations applied at least as far back as January 2015, when his colleague Dr. Dennehy began treating her. AT 2068. The treating record from March 2013 to August 2017 contained multiple positive clinical findings for tenderness in the sacrum, pelvis, spine, trapezius, head, neck, shoulders, knees, hands, chest, and ankles. AT 543-554, 687, 1133-1134, 1283, 1657, 2223, 2101, 2354. The record also showed a history of recurring symptoms consistent with fibromyalgia, such as headache, depression, insomnia, and fatigue. See AT 19-21 (summarizing medical evidence); Garrison, 759 F.3d at 1013 (ALJ erred by "fail[ing] to recognize that the opinions expressed in [treating physician's] check-box form . . . was supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").

In finding that plaintiff's fibromyalgia was nonsevere at Step Two, the ALJ reasoned:

> The claimant's other impairments . . . have symptoms and signs that are the same or similar to those resulting from fibromyalgia, including widespread pain, stiffness, tenderness, sleep disturbance, cognitive impairment, and fatigue. The record does not contain evidence that these other impairments have been excluded as the cause for her symptoms and signs of fibromyalgia. Accordingly, even though the record contains evidence of a diagnosis of fibromyalgia and treatment for fibromyalgia, her fibromyalgia is not a medically determinable impairment[.]

AT 25 (record citations omitted). However, in his 2016 opinion, plaintiff's treating

10

rheumatologist concluded that "[t]here are no diagnoses other than fibromyalgia that better explain my patient's symptoms and limitations." AT 2064. Insofar as the ALJ substituted his own assessment of the medical evidence for Dr. Hojjati's, this was error.

The ALJ's next reason for rejecting Dr. Hojjati's fibromyalgia opinion was that the assessed limitations were "out of proportion to objective evidence," citing "findings [of] normal range of motion in all joints, normal gait, normal motor function, 5/5 muscle strength in the upper and lower extremities, normal reflexes and intact sensation." However, as the Ninth Circuit explained in Revels, fibromyalgia is unusual in that "those suffering from it have muscle strength, sensory functions, and reflexes that are normal." 874 F.3d at 656. "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms'"; "there are no laboratory tests to confirm the diagnosis." Id. (quoting Benecke, 379 F.3d at 590). Thus, these normal results provide little reason to reject the treating rheumatologist's opinion about plaintiff's fibromyalgia-related limitations.

The ALJ also cited plaintiff's "history of conservative medical care" as a reason to reject Dr. Hojjati's 2016 opinion. However, the record shows that plaintiff had been prescribed numerous medications for her symptoms, but could not tolerate them due to side effects. See AT 61-62 (hearing testimony), 1934, 2066.

Notably, the State agency physicians who opined that plaintiff could perform light work and/or had nonsevere mental impairments, reviewed plaintiff's medical file in 2014, before Dr. Hojjati issued his opinions in 2016. AT 97-120, 123-150. Thus, the State agency physicians did not consider whether plaintiff's fibromyalgia was a severe medically determinable impairment or any related physical and mental limitations, and Dr. Hojjati's opinion as to plaintiff's fibromyalgia-related limitations is essentially uncontradicted.

Based on the foregoing, the undersigned concludes that the ALJ did not provide legally sufficient reasons, supported by the record, to discount the treating rheumatologist's opinions on plaintiff's fibromyalgia-related symptoms and limitations.[8]

---

[8] The undersigned does not reach plaintiff's other arguments as to the medical opinion evidence.

This error was not harmless, as the ALJ found at Step Two that plaintiff's fibromyalgia was a non-medically determinable impairment or, alternatively, that it was a "nonsevere impairment [that] does not cause more than minimal limitation in her ability to perform basic work activities, and any limitations caused by her nonsevere impairment of fibromyalgia are accounted for in the below residual functional capacity[.]" AT 25. The RFC does not account for multiple limitations opined by the treating specialist. Thus, plaintiff is entitled to summary judgment on this basis.

### B. Non-Severe Impairments

Plaintiff also asserts that the ALJ erred in finding only two severe impairments at Step Two: degenerative disc disease of the spine and obstructive sleep apnea. AT 18.

The ALJ determined that plaintiff "has non-severe impairments of diverticulitis, migraines, asymptomatic bilateral knee chondromalacia, right shoulder pain, carpal tunnel syndrome and obesity. These impairments have not resulted in more than minimal functional limitations for a continuous period of 12 months or more." AT 19. As discussed above, the ALJ found plaintiff's fibromyalgia to be, at most, a nonsevere impairment. AT 25.

The ALJ next found plaintiff to have "non-severe mental impairments of depressive disorder and anxiety disorder[,]" as these impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[.]" AT 20.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28.

As the Ninth Circuit explained in Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and citations omitted.)

Here, the RFC did not include mental limitations. The ALJ noted, however, that plaintiff "reported limitations in memory, completing tasks, concentration, and following instructions." AT 20. She also "reported mood instability and overall functioning. The claimant alleged she is unable to sustain work function due to the severity of her symptoms and limitations." AT 20. Plaintiff was treated for depression in August 2013, diagnosed with major depressive order in April 2014, reported a history of recurrent depression in June 2014, and was subsequently treated for mental impairments. AT 20-21. Plaintiff's GAF scores ranged from 50-65, indicating mostly moderate mental symptoms.[9] AT 22; see AT 1204 (GAF 60); AT 1309-1310 (GAF 55); AT 1306-1307 (GAF 50); AT 1524 (GAF scores of 55 and 60) AT 1930 (GAF score of 60).

In June 2015, plaintiff's primary care doctor opined that plaintiff suffered from chronic headaches, memory problems, and fatigue, and that depression affected her physical condition. AT 1572. He opined that she was likely to miss about four days of work per month and had an

---

[9] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.

inability to "handle stress or noise." AT 1572-1574. An October 2016 mental status examination "showed impaired memory, depressed mood and restricted affect. . . . Diagnoses included depressive disorder and posttraumatic stress disorder. [The examining doctor] opined the claimant's condition is not expected to improve significantly in 12 months." AT 21, citing AT 2059-2063. In January 2016, treating specialist Dr. Hojjati opined that plaintiff's depression contributed to the severity of her symptoms and functional limitations, that her symptoms would likely increase if she were placed in a competitive work environment, and that she was likely to be absent from work more than three times a month. AT 1933-1937. In a separate opinion, Dr. Hojjati opined that plaintiff's diagnosed impairments included depression and migraines, that her "experience of pain, fatigue, or other symptoms" would "frequently" interfere with attention and concentration, and that she was likely to be absent from work more than three times a month. AT 2064-2068. In a 2016 mental impairment questionnaire, M. Robinson, LMFT, opined that plaintiff "had marked limitation in her ability to concentrate, interact, and adapt"; "moderate to marked limitation in the abilities to maintain concentration, work in coordination with others, [and] complete a normal workday"; and was likely to be absent from work more than three times a month. AT 22; see 1939-1942.

When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4). Here, the undersigned concludes that the RFC, which included no mental limitations despite a record clearly indicative of limiting mental impairments, was not grounded in substantial evidence, and that the error was not harmless. Plaintiff is entitled to summary judgment on this basis as well.[10]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

---
[10] This opinion does not reach the remaining claim.

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, after the issuance of an original agency opinion and a second opinion on remand (see AT 15, 76), the record has been fully developed, and further administrative proceedings would serve no useful purpose. In this regard, the voluminous record includes multiple medical opinions, medical evidence, plaintiff's testimony, lay witness testimony, and the testimony of a vocational expert. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting evidence. If the treating specialist's opinions were credited as true, the ALJ would be required to find the claimant disabled on remand. See Trevizo v. Berryhill, 871 F.3d 664, 683 (9th Cir. 2017) (remanding for benefits where ALJ failed to provide legally sufficient reasons for rejecting the treating doctor's opinion establishing that plaintiff could not sustain full-time work). The vocational expert testified that an employer would not tolerate multiple absences per month, a limitation opined by the treating specialist and echoed by plaintiff's treating physician and a third medical provider. AT 93. Moreover, the record as a whole does not create serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is denied;

15

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: March 19, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/martin2911.ssi.ckd